IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | 4:05CR3138 |
|---|---|---|
| Plaintiff, | ) ) | MEMORANDUM AND ORDER ON |
| v. | ) ) ) | DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE |
| EMANUEL CARLOS CAMACHO, | ) ) | |
| Defendants. | ) ) | |

On May 3, 2010, the defendant, Emanuel Carlos Camacho, filed a "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody." (See ECF No. 357.) My analysis of the defendant's motion is set forth below.

### I. BACKGROUND

An indictment filed on December 15, 2005, charged the defendant and three others with conspiring to distribute and to possess with the intent to distribute "500 grams or more of a mixture or substance . . . containing a detectable amount of cocaine," "a mixture or substance containing opium and opiate," and "a mixture or substance containing a detectable amount of marijuana," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), and 846. (See ECF No. 1.) On January 27, 2006, the defendant entered a plea of not guilty. (See ECF No. 29.) A jury trial commenced on December 4, 2006, (see ECF No. 167), but I declared a mistrial on December 5, 2006, and scheduled a retrial to begin on March 5, 2007, (see ECF No. 170).

At the conclusion of the retrial, the jury found the defendant guilty of conspiring to distribute "less than 500 grams" of cocaine and "a detectable amount of marijuana." (See ECF No. 216 at 1-2). The probation office then prepared a Presentence Investigation Report (PSR), which states in paragraph 25 that because the defendant was responsible for 20 pounds of marijuana and 890 grams of cocaine, his base offense level is 26. The defendant, through counsel, objected to this paragraph, (see ECF No. 241), and I found tentatively that the defendant's objection had merit, (see ECF No.

1

250). More specifically, I found that because the jury concluded "that the quantity of cocaine involved in the conspiracy . . . was 'less than 500 grams,'" only 450 grams of cocaine should be attributed to the defendant, and the base offense level should be 22. (ECF No. 250 at 1.)[1] Defense counsel also objected to paragraph 26 of the PSR, which states that the offense level should be increased by three levels because the defendant was a manager or supervisor of a conspiracy that involved five or more participants. (See PSR ¶ 26; ECF No. 241 at 1.) See also U.S.S.G. § 3B1.1(b). I tentatively found, however, that the defendant "should receive a three-level increase as . . . found by the probation officer." (ECF No. 250 at 1.)

The government objected to my tentative finding that the amount of cocaine attributed to the defendant should be limited by the jury's drug quantity determination. (See ECF No. 255.) The parties argued the issue during the sentencing hearing, (see Sentencing Tr. 4-14, June 13, 2007), and I found that, by a greater weight of the evidence, the defendant was responsible for the equivalent of 187 kilograms of marijuana, and that his base offense level was 26, (see id. at 13). Also, I stood by my tentative finding that there should be a three-level increase for the defendant's role in the offense, "making a total offense level of 29." (Id. at 14.) In so doing, I rejected defense counsel's arguments that "there was a different conspiracy as to each drug," that the conspiracy involved only "four isolated trips," and that two of the co-conspirators–Doug and Lindsey Yoder–"were one as far as this conspiracy was concerned." (See id. at 15-18.)

During the sentencing hearing, defense counsel argued that the defendant's criminal history was "overstated at IV," and "[i]t should properly be a III." (Sentencing Tr. 18, June 13, 2007.) After hearing arguments about the matter, I concluded that there were "seven criminal history points," which "does not overstate the criminal history of the defendant, so the criminal history category is . . . IV." (See id. at 18-23.)

After having adopted the PSR without change, I determined that the advisory guideline range was 121 to 151 months, based on a total offense level of 29 and a criminal history category of IV. (See ECF No. 270 at 1.) I sentenced the defendant to 121 months of imprisonment, followed by a three-year period of supervised release. (See ECF No. 269.) The defendant appealed his conviction

---

[1] In fact, this finding should have placed the offense level at 24 rather than 22. (See, e.g., Sentencing Tr. 3, June 13, 2007.)

and sentence, but the Eighth Circuit affirmed both in an opinion filed on February 11, 2009. (See ECF No. 335.) See also United States v. Camacho, 555 F.3d 695 (8th Cir. 2009).

The defendant filed a § 2255 motion on May 3, 2010, (ECF No. 357), and on June 9, 2010, the government answered the motion, (ECF No. 365). On June 14, 2010, the defendant filed an "Addendum to his 2255," which includes a new argument in support of his § 2255 motion. (ECF No. 366.) Then on July 6, 2010, the defendant filed a document that has been listed on the docket sheet as a "Motion for Copies." (ECF No. 369.) This motion states that the defendant's late trial counsel left legal documents pertaining to this case in the custody of Ms. Jessica Milburn, and that he (the defendant) has struggled to obtain copies of these documents. (See id. at 1.) It adds that the documents are "very [crucial] to [the defendant's] filing of a proper response" to the government's answer to the § 2255 motion, and it asks that the court either provide the defendant with copies of the indictment, the PSR, the judgment, and "[g]overnment [w]itness [s]tatements," or order Ms. Milburn to produce those documents to him. (Id.) On July 6, 2010, the defendant also filed a "Traverse to Government's Answer," along with a pair of exhibits. (ECF No. 370.)

On July 29, 2010, I ordered Ms. Milburn to "file and serve a document setting forth whether she does have custodial possession of [the relevant] files in this case and whether those files contain the items the defendant requests in his letter, filing 369." (ECF No. 371.) On August 19, 2010, Ms. Milburn filed a response stating that she has possession of the following documents:

1. Various pleadings including the Indictment requested by Mr. Camacho in Filing No. 369;

2. Material disclosed pursuant to FRCP 16, including police reports, witness statements, phone records, proffer statements and agreements, travel records and Western Union records;

3. Appellate briefs submitted by Mr. Camacho and the government;

4. Sentencing material, including the Pre-Sentence Report[;]

5. Handwritten notes, which appear to be trial counsel's notes for use during trial and at trial;

6. Trial transcript of Mr. Camacho's first trial, which ended in a mistrial; and

3

       7.      Trial counsel's billing notes.

(ECF No. 373 at 1.) The response also states that Ms. Milburn would keep these documents in her possession pending further direction from me, and it advises that because "federal inmates are prohibited from possessing their presentence reports," the PSR would "be confiscated by Bureau of Prison personnel if counsel attempts to send it to Mr. Camacho." (Id. at 1-2.)

On September 8, 2010, Ms. Milburn filed a notice stating that she sent the indictment and the "[m]aterial disclosed pursuant to FRCP," which is itemized above, to the defendant via United States mail. (ECF No. 374.)

On September 20, 2010, I entered an order denying the defendant's motion for copies as moot. (ECF No. 375.) In this order, I explained that Ms. Milburn satisfied the defendant's request for a copy of the indictment and "Government Witness Statements"; that I would mail to the defendant a copy of the Judgment and Commitment; and that the defendant had been instructed, via letter, how to request a copy of the PSR under the Freedom of Information Act. (Id. at 2.)

The defendant has now had more than three months to request a copy of the PSR and to review the other documents that he sought from Ms. Milburn and from the court. He has made no additional filings in support of his § 2255 motion, nor has he requested additional time to make filings or obtain new information. I find that the § 2255 motion is now ripe for a review to determine whether an evidentiary hearing is warranted.

## II.   STANDARD OF REVIEW

Section 2255(a) states, "A prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence." "A § 2255 movant is entitled to an evidentiary hearing unless "the motion and the files and records of the case conclusively show that [he] is entitled to no relief." Sinisterra v. United States, 600 F.3d 900, 906 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). "No hearing is required where the claim is

inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." Id. (quoting Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007)). See also Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) ("Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.").

### III.   ANALYSIS

The defendant's § 2255 motion, as originally filed, includes three grounds for relief: 1) trial counsel provided ineffective assistance by failing to "purs[ue] the supervisor role enhancement"; 2) trial counsel provided ineffective assistance because he "failed in proving that [the defendant's] criminal history is III instead of IV"; and 3) a "[d]ue process violation occurred when [the] District Court did not permit the clarification of [the] jury's misconduct." (ECF No. 357 at 5-7.)[2] In the addendum filed on June 10, 2010,[3] the defendant submitted an additional ground for relief: 4) by

---

[2] The page numbers that appear in the top right corner of each page of filing number 357 are not accurate; nevertheless, I shall cite to those page numbers when referring to that filing.

[3] The court's CM/ECF system indicates that the defendant's addendum was filed on June 14, 2010. The defendant's addendum is dated June 8, 2010, (see ECF No. 366 at 2), and the defendant argues that his addendum should be deemed filed on that date, (see ECF No. 370 at 11). But the addendum is accompanied by a "proof of service by mail," signed under penalty of perjury, stating that the defendant deposited his addendum in the prison's legal mail receptacle on June 10, 2010. (See ECF No. 366 at 3.) "Under the prison mailbox rule, a pro se pleading is deemed filed upon deposit in the prison mail system prior to the expiration of the filing deadline." United States v. Harrison, 469 F.3d 1216, 1217 (8th Cir. 2006). See also Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 3(d). I therefore find that the defendant's addendum was filed on June 10, 2010.

The government filed its answer to the defendant's § 2255 motion on June 9, 2010, (see ECF No. 365), and I consider the defendant's addendum to be a timely amendment to his § 2255 motion, see Harrison, 469 F.3d at 1217 (explaining that "[t]he Federal Rules of Civil Procedure govern 2255 motions" and indicating that Rule 15(a) governs requests to amend § 2255 motions that are made prior to the entry of a judgment); Fed. R. Civ. P. 15(a)(1)(B) (stating that a party may amend its pleading as a matter of course within 21 days after a responsive pleading is served).

rejecting the jury's drug quantity determination and making its own drug quantity finding, the court violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and the Constitution's Fifth and Sixth Amendments. (ECF No. 366 at 2.) Later, on July 6, 2010, the defendant requested that I dismiss his "[d]ue process violation claim." (See ECF No. 370 at 11.) I consider the due process claim to be withdrawn, and I will proceed to determine whether the defendant is entitled to a hearing on any of his three remaining claims.

### A. The "Aggravating Role" Enhancement

The defendant's offense level was increased pursuant to U.S.S.G. § 3B1.1(b), which provides for a three-level enhancement "[i]f the defendant was a manager or supervisor . . . and the criminal activity involved five or more participants or was otherwise extensive." The defendant argues that his trial counsel made a "poor and [un]prepared objection to the number of participants" that "was overruled i[m]mediately by the court," which caused the defendant to suffer a three-level enhancement under § 3B1.1(b) instead of a two-level enhancement under § 3B1.1(c). (ECF No. 370 at 3.) He submits that his attorney's performance amounted to constitutionally ineffective assistance.

"To establish his claim of ineffective assistance of counsel, [the defendant] must prove that his attorney['s] performance was deficient and that the deficient performance prejudiced his defense." Sinisterra v. United States, 600 F.3d 900, 906 (8th Cir. 2010) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The court is not required to address both the "deficient performance" and "prejudice" prongs "if the movant makes an insufficient showing on one of the prongs." Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995). To establish that counsel's performance was deficient, the defendant must show that, when all of the circumstances are considered, and when counsel's performance is viewed objectively "in light of professional norms prevailing when the representation took place," his performance fell "below the range of competence demanded of attorneys in criminal cases." Sinisterra, 600 F.3d at 906 (citations and internal quotation marks omitted). To establish prejudice, the defendant must show "that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently." King v. United States, 595 F.3d 844, 852 (8th Cir. 2010).

As noted above, the defendant submits that counsel's performance was deficient at sentencing because he failed to convince me that the defendant did not conspire with five or more persons. According to the defendant, counsel should have argued that he (the defendant) maintained only "buyer/seller" relationships with Jeffrey Romero and Phillip Camacho, and there was no "agreement to commit some other crime beyond the . . . sale agreement by itself." (ECF No. 370 at 3-4.) Also, although he concedes that he conspired with Doug Yoder, he claims that Doug and Lindsey Yoder were engaged in a separate conspiracy, and Phillip Camacho and Randy Knaub were partners in yet another separate conspiracy. (Id. at 5.) He adds, "That Lindsey Yoder was aware of the conspiracy to distribute narcotics does not establish her membership in the conspiracy." (Id. at 4.)

It is true that "evidence of mere buyer/seller exchanges . . . does not establish the existence of a conspiracy." United States v. Jensen, 141 F.3d 830, 834 (8th Cir. 1998). In this case, however, the record refutes the defendant's argument that he maintained only buyer/seller relationships with Jeffrey Romero and Phillip Camacho. On the contrary, the evidence presented at trial established that the defendant, Romero and Phillip Camacho had an agreement to distribute–and to possess with the intent to distribute–drugs. First, there is no dispute that the defendant had an agreement with Doug Yoder to distribute marijuana obtained from Jeffrey Romero. (See ECF No. 370 at 3. See also Trial Tr., vol. 1, 121-122, March 6, 2007.) In 2005, the defendant arranged a meeting between Doug Yoder and Phillip Camacho to discuss the quantities of marijuana that Doug would transport from the defendant to Phillip so that Doug could work off a debt to the defendant. (Trial Tr., vol. 1, 62-69, 84-85, 91-92, 115-116, March 6, 2007.) The defendant and Doug Yoder obtained this marijuana from Romero–at least on occasion–and Doug and Lindsey Yoder delivered the marijuana to Philip Camacho and Randy Knaub. (Trial Tr., vol. 1, 69-70, 108-114, 121-122, March 6, 2007.) Phillip, in turn, intended to distribute further the marijuana that he received from the defendant. (See, e.g., id. at 137.) In short, Romero, Phillip Camacho, the defendant, and others did not merely buy and sell drugs from one another for their own personal use; rather, there was an agreement between them to distribute drugs. See United States v. Johnson, 619 F.3d 910, 921 (8th Cir. 2010) (holding that where the defendant served as a "key link" between drug suppliers and distributors, a finding that the defendant was a manager in the conspiracy is supported). Because the defendant's "buyer/seller"

7

argument is contradicted by the record, it cannot be said that defense counsel's failure to advance this particular argument amounted to deficient performance that prejudiced the defendant. See, e.g., Shaw v. United States, 24 F.3d 1040, 1043 (8th Cir. 1994) ("Accordingly, a claim may be dismissed without an evidentiary hearing if . . . the record affirmatively refutes the factual assertions upon which it is based.").

The defendant's arguments that Lindsey Yoder, Phillip Camacho, and Randy Knaub were not participants in a conspiracy with him, but instead participated only in some separate conspiracy or conspiracies, are also contradicted by the record. Lindsey Yoder testified, for example, that she assisted Doug Yoder in transferring drugs acquired from the defendant and Jeffrey Romero to Phillip Camacho and Randy Knaub. (E.g., Trial Tr., ECF No. 324, at 6-8, 15-18, 23-29, 40-62, March 12-13, 2007.) The existence of a single conspiracy between the defendant, the Yoders, Phillip Camacho, Jeffrey Romero, and Randy Knaub was established by the evidence presented at trial, and in light of this evidence, defense counsel's decision to forego the argument that the defendant conspired only with Doug Yoder did not constitute deficient performance.

It merits reemphasis that defense counsel did argue at the sentencing hearing that the § 3B1.1 enhancement should not apply because the conspiracy included less than five participants and because there were multiple conspiracies–but these arguments were rejected by me. (See Sentencing Tr. 14-18, June 13, 2007.) It appears that counsel did not pursue these arguments on appeal, opting instead to argue that the defendant was not a manager or supervisor of the conspiracy. See United States v. Camacho, 555 F.3d 695, 705 (8th Cir. 2009).[4] I find that, given the facts presented at trial, counsel's decision to abandon weak arguments about the number of conspirators involved and the existence of separate conspiracies "was an exercise of sound appellate strategy." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008).

In summary, the defendant's claim that trial counsel performed deficiently by failing to defeat the § 3B1.1 sentence enhancement rests on allegations that are refuted by the record, and the defendant's claim will be dismissed without a hearing.

---

[4] It should be noted that the Eighth Circuit affirmed my finding that the defendant acted as a manager or supervisor in the conspiracy. See United States v. Camacho, 555 F.3d 695, 705-06 (8th Cir. 2009).

### B. Criminal History

The defendant argues next that his attorney provided ineffective assistance because he failed to argue effectively that the criminal history category should be lower than IV. Although the defendant concedes that "counsel mentioned this issue at [the] sentencing hearing," he claims that counsel "was not prepared" and "did not investigate [his] criminal history properly." (ECF No. 370 at 6.) The defendant also claims that, had his attorney studied the PSR and the defendant's "priors," he would have been able to demonstrate that the defendant "was never in prison for any of [his] priors," and that the "government and the probation officer's [criminal history category] calculation was erroneous." (Id. at 6-7.)

As I noted previously, in order to establish that his attorney provided ineffective assistance, the defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. See Sinisterra, 600 F.3d at 906 (citing Strickland, 466 U.S. at 687). The defendant maintains that he was prejudiced because his criminal history category would have been lower had counsel performed competently. More specifically, he states:

> 1) On two of my priors (46-47 from PSR) as juvenile, I was sentenced without an attorney. 2) One of those juvenile priors (47 from PSR) was a deferred judgment, a non-felony offense, such prior should not have been counted. 3) The third prior, (48 from PSR) the probation officer used 4A1.1(b), which reads:
>
>> "Add: two (2) points for each prior sentence of imprisonment of at least sixty days not counted in (a)."
>
> A) I was never in prison for any of my priors.
> B) Not even "at least sixty days." 4) [In paragraph] # 52 from [the] PSR the probation officer stated that "Pursuant to U.S.S.G. § 4A1.1(e), one point is added because the instant offense was committed within two years of the defendant's release from imprisonment on a sentence counted under U.S.S.G. § 4A1.1.(a) and (b)."
>
>> . . . With the proper documentation, state priors, it would have been so easy to demonstrate that government and the probation officer's calculation was erroneous.

(ECF No. 370 at 6-7 (citation omitted).) I shall review the defendant's arguments about each of the relevant paragraphs of the PSR to determine whether a hearing is necessary to address them.

Paragraph 46 of the PSR states that on March 14, 2002, the defendant was sentenced to "6 months unsupervised probation, 4 days jail and $68 fine" on a charge of "Accessory to a Crime (Theft)." On November 8, 2002, a warrant was issued "for failure to comply with probation," and on March 28, 2003, probation was revoked, and the defendant was sentenced to "6 days jail." Paragraph 46 also states, "The violation of probation alleged that the defendant failed to comply with his four day jail sentence." Based on these facts, one criminal history point was assessed pursuant to U.S.S.G. § 4A1.1(c).[5] The defendant suggests that this point was not properly assessed because he "was sentenced without an attorney" in the prior case. (ECF No. 370 at 6.) In support of his argument, the defendant refers me to a document that appears to indicate that the defendant was not represented by counsel in a case with a number that corresponds to the case number reported in paragraph 46 of the PSR. (See ECF No. 370, Ex. B.) He adds in a footnote that he did not waive the right to be represented by an attorney in that case. (See ECF No. 370 at 10 (citing Exs. A and B).)

For the purposes of this motion, I shall assume that the defendant was not represented by counsel in the case described in paragraph 46 of the PSR. Nevertheless, I find for the following reason that the defendant's claim is "inadequate on its face." Sinisterra v. United States, 600 F.3d 900, 906 (8th Cir. 2010). Ordinarily, a defendant may not use a federal sentencing proceeding to collaterally attack prior convictions that are used to enhance the federal sentence. See Moore v. United States, 178 F.3d 994, 997 (8th Cir. 1999); United States v. Strange, 102 F.3d 356, 362 (8th Cir. 1996). An exception to this general rule applies "where a defendant claims that a previous conviction was obtained following a constitutionally unsound waiver of counsel." Strange, 102 F.3d at 362. See also Moore, 178 F.3d at 994. "Under this exception, the government has the initial burden of proving the fact of conviction, and then the defendant must show that the conviction was constitutionally infirm." Moore, 178 F.3d at 994. In Strange, the defendant argued on direct appeal that the district court erred by assessing a criminal history point for a Missouri conviction

---

[5] U.S.S.G. § 4A1.1(c) states, "Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item." Subsection (a) states that 3 points are to be added "for each prior sentence of imprisonment exceeding one year and one month," and subsection (b) states that 2 points are to be added "for each prior sentence of imprisonment of at least sixty days not counted in (a)."

that–according to the defendant–occurred without his making a knowing and intelligent waiver of counsel. See 102 F.3d at 362. The court held that a "bare bones, single sentence argument unsupported by authority" is inadequate "to carry [the defendant's] burden of demonstrating that his state court conviction was constitutionally infirm." Id. Here, Mr. Camacho has made a similar "bare bones" allegation in a footnote to his brief stating that he did not waive counsel in the prior case, and the exhibits he cites do not support this allegation. This sort of conclusory allegation is insufficient to support a claim that the prior conviction is constitutionally infirm, and therefore it cannot be said that counsel's failure to raise such an allegation at sentencing prejudiced the defense.

Paragraph 47 of the PSR states that on January 24, 2002, the defendant was sentenced to "12 months unsupervised deferred judgment and $120 fine/cost" on a charge of assault. One criminal history point was assessed pursuant to U.S.S.G. § 4A1.1(c). The defendant claims that this point should not have been assessed because he was sentenced without an attorney in that prior case and because the case involved "a non-felony offense" that resulted in "a deferred judgment." (ECF No. 370 at 6.)

I must reject the defendant's argument that a criminal history point cannot be assessed in paragraph 47 on the ground that the defendant was unrepresented in the prior case. As I explained above, a conclusory allegation that the defendant did not waive counsel is inadequate to support a claim that the underlying conviction is constitutionally infirm. I must also reject the argument that this criminal history point cannot be assessed on the ground that the defendant was charged with a misdemeanor offense and given a deferred sentence, because this argument runs counter to controlling authority. See Nichols v. United States, 511 U.S. 738, 748-49 (1994) ("Accordingly we hold, consistent with the Sixth and Fourteenth Amendments of the Constitution, that an uncounseled misdemeanor conviction, valid under Scott because no prison term was imposed, is also valid when used to enhance punishment at a subsequent conviction."); United States v. Mister, 363 F. App'x 422, 423 (8th Cir. 2010) ("[A] conviction for which imposition or execution of sentence is totally suspended or stayed is counted as a prior sentence under U.S.S.G. § 4A1.1.(c)." (Citing, inter alia, U.S.S.G. § 4A1.2(a)(3))); United States v. Nunez, 137 F. App'x 926, 927 (8th Cir. 2005) (rejecting defendant's argument that two prior convictions should not have been assessed criminal history points "because in each case he received probation and was not represented by counsel"); United

States v. Moore, 245 F.3d 1023, 1025 (8th Cir. 2001) (explaining that misdemeanors that do not fall within the category of excepted offenses listed in section 4A1.2(c) are counted under section 4A1.1). It cannot be said that counsel's failure to raise the arguments specified by the defendant led to the improper assessment of a criminal history point under paragraph 47 of the PSR; thus, counsel's lack of action did not prejudice the defense.

Paragraph 48 of the PSR states that on December 18, 2002, the defendant pleaded guilty to charges of forgery and theft in Colorado, and on February 5, 2003, he was sentenced to "12 months work release, 48 months probation, $4,000 restitution and $2,540 fine/costs." It also states,

> Information indicates Mr. Camacho violated his probation on December 28, 2005, because of his indictment in this case. According to the state probation officer in Colorado, Mr. Camacho served his work release sentence from February 12, 2003, to January 21, 2004. The probation officer also verified the work release sentence is a custodial sentence.

(ECF No. 256, Revised PSR, ¶ 48.) Two criminal history points were assessed pursuant to U.S.S.G. § 4A1.1(b).

During the sentencing hearing, the defendant's attorney argued that the defendant's criminal history was "overstated at IV." (Sentencing Tr. 18, June 13, 2007; see also id. at 18-20.) He also argued,

> I'm not sure that paragraph 48, now that I look at it, correctly calculates whether he . . . deserves a two-point . . . assessment for that crime. It says he received 12 months' work release and 48 months' probation. Doesn't say that he was in prison. Probation officer didn't find the imprisonment that would be required by 4A1.1(b), which is a prior sentence of imprisonment of at least 60 days not counted in (a), which is one year and a month.
>
> The presentence report is deficient in . . . that regard. I think that an alternative reason to not count . . . 48, which carries with it a failure to enhance in 51 and 52. Don't know that work release equals imprisonment.
>
> . . . .
>
> The term of "sentence of imprisonment is defined in 4A1.2(d) as a sentence of incarceration. And there's nothing in the presentence report that indicates that 12 months of work release is equivalent to incarceration under the laws of Colorado.

(Id. at 21-22.) I overruled the objection, stating,

12

> . . . I noticed in paragraph 48 . . . it says . . . According to the state probation officer in Colorado, Mr. Camacho served his work release sentence from February 12, 2003 to January 21, 2004. Probation officer also verified the work release sentence is a custodial sentence.
>
> I take that to mean that he was in custody of the prison system. I have never heard of a work release sentence that did not mean you're in jail or prison and are released daily, or some other period of time, but you're released from that to go to work, whenever . . . the work calls for you to go to work. So you're in prison, but you're also able to spend time working while the prison sentence is in effect, so that you spend some of that time in prison, some of that time working.
>
> I don't know what you call it if there was no imprisonment involved. It would be probation, it seems to me. And it's not probation. The probation, it says, was for a different time length. And that 12-month work release, it was a 48 month . . . probation term.
>
> I . . . think I need to interpret it that way. And I do. And therefore, the objection is overruled.

(Id. at 22-23.)

The defendant claims that two points should not have been assessed pursuant to paragraph 48 because he was "never in prison" for any of his prior offenses, and therefore the prior offense described in that paragraph could not have satisfied the requirement of "imprisonment of at least sixty days" set forth in U.S.S.G. § 4A1.1(b). (ECF No. 370 at 6-7.) His argument mirrors that raised by his attorney and rejected by me during the sentencing hearing, and I find that it is without merit. The relevant issue is not whether the defendant was sentenced to "prison," but whether he received a "sentence of imprisonment" within the meaning of section 4A1.1. "The term 'sentence of imprisonment' means a sentence of incarceration." U.S.S.G. § 4A1.2(b)(1). Although "[p]hysical confinement without being free to leave is a key factor in determining whether a sentence is one of incarceration," it does not follow that a "sentence of incarceration" cannot include work release. See United States v. Morgan, 390 F.3d 1072, 1074 (8th Cir. 2004) (citing United States v. Timbrook, 290 F.3d 957, 959-60 (7th Cir. 2002), for its holding "that a sentence in a secure facility, even with work release, qualified as a sentence of imprisonment"). The record shows that the defendant was sentenced to a "custodial sentence" of 12 months with work release, and this constitutes a sentence of imprisonment for the purposes of section 4A1.1. Thus, two points were properly assessed in

13

accordance with paragraph 48 of the PSR. More to the point, the defendant cannot show that his counsel performed ineffectively under these circumstances.

To bolster his argument that his attorney was poorly prepared during the sentencing hearing, the defendant submits that his trial counsel "showed up to trial without proper paperwork" and "mislead jurors" during his opening statement. (ECF No. 370 at 7, 9.) He refers me first to pages 83-85 of the trial transcript, which includes the following portion of defense counsel's opening statement:

> Mr. Levy: The evidence is going to show - - show that Mr. Camacho was paid by the United States government the sum of $3,356.27 to get him out of Lincoln, to get him down to Florida, to hide him out, because Camacho (sic), the evidence will show, and I believe you'll find, fashioned some cock-and-bull story that after a prior hearing in this case . . . .
>
> . . . But it shows how badly the government wants Yoder and Yoder to be witnesses in this case that they would fall for - - I don't know that they fell for it, but that they would take this cock-and-bull story, accept it as fact, and give to the Yoders 3400 bucks, instead of telling the Yoders you're under subpoena to appear in court and tell the truth and we're just going to give you a witness fee of $50, which you're entitled to. The government pays good hard taxpayers' money to these people.
>
> So that I think is a significant black mark on the prosecution in this case. I --
>
> The Court: Mr. Levy.
>
> Mr. Levy: Yes.
>
> The Court: You have made a statement Mr. Camacho was paid.
>
> Mr. Levy: Oh, I'm sorry. Did I? I have that problem.
> The Yoders were paid that money. Mr. Camacho wasn't paid that money. I misspoke and I apologize for that.
> 3356.27 went to the Yoders to facilitate their testifying in this case because of this bizarre story that they spun.

(Trial Tr. vol. 2, 83-85, March 6, 2007.) The defendant also refers me to page 19 of the transcript of the sentencing hearing, which records the following exchange:

14

> Mr. Levy: And that probation would normally have expired in July of 2000 - - I'm sorry, in February of 2007. Which, although is during the conspiracy, it's not during the conspiracy by much. It's - - and I don't have my indictment with me, but I think it guides you to the period of the conspiracy is charged – Sara, can you help me?
>
> Ms. Fullerton: I'm sorry?
>
> Mr. Levy: I need assistance on that. I thought I had the indictment.
>
> Ms. Fullerton: The time frame?
>
> Mr. Levy: Yeah. Here it is.
>
> Ms. Fullerton: March 2005 to August - -
>
> Mr. Levy: 2005 to August 2005.
>
> Ms. Fullerton: Right.

(Sentencing Tr. 19, June 13, 2007. See also ECF No. 370 at 7-8.) Citing Burdine v. Johnson, 262 F.3d 336 (5th Cir. 2001), the defendant argues that the foregoing excerpts show that "[c]ounsel failed at critical stages," and that the constitution "compels the presumption that counsel prejudiced the defendant." (ECF No. 370 at 8-9.)

In some circumstances, prejudice to a defendant is so likely that it may be presumed, and a Strickland analysis need not be undertaken. See, e.g., Bell v. Cone, 535 U.S. 685, 695-96 (2002) (discussing United States v. Cronic, 466 U.S. 648 (1984)). The shortcomings cited by the defendant in this case clearly do not rise to such a level, however. In Cronic, the Court "identified three situations implicating the right to counsel that involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" Bell, 535 U.S. at 695 (quoting Cronic, 466 U.S. at 658-59). The first and "most obvious" of these situations is a "complete denial of counsel" at "a critical stage" of the criminal proceeding. Id. at 695-96. The second situation arises when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." Id. at 696 (quoting Cronic, 466 U.S. at 659). And the third arises "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." Id. (citing Powell v. Alabama, 287 U.S. 45 (1932)). The Eighth Circuit has noted that

15

situations such as these–where a presumption of prejudice is warranted–rarely arise. See Freeman v. Graves, 317 F.3d 898, 900-01 (8th Cir. 2003). In Burdine v. Johnson, which the defendant cites in his brief, defense counsel "slept repeatedly throughout the guilt-innocence phase of [the defendant's] 1984 capital murder trial," and the Fifth Circuit concluded that the defendant had been "denied counsel at a critical stage of his trial," such that prejudice must be presumed. 262 F.3d at 338. Id. The instant case is plainly distinguishable, and it cannot be said that "counsel completely failed to participate in the proceedings" here. United States v. White, 341 F.3d 673, 679 (8th Cir. 2003). In short, the portions of the transcripts cited by the defendant simply do not show that counsel's representation was so inadequate "as to justify dispensing with the usual requirement that prejudice must be shown." Id. (quoting White v. Luebbers, 307 F.3d 722, 729 (8th Cir. 2003)).

Furthermore, I find that the portions of the trial and sentencing transcripts cited by the defendant do not bolster the defendant's claim that counsel's ineffective assistance caused the criminal history category to be IV. Counsel's misstatement to the jury (which was immediately corrected) and his inability to locate promptly a copy of the indictment during sentencing were harmless.

Finally, citing Rompilla v. Beard, 545 U.S. 374 (2005), the defendant argues that "[w]ithout efforts to learn details and rebut relevance of priors, counsel's argument was beyond any hope." (ECF No. 370 at 10.) In Rompilla, defense counsel performed unreasonably because she failed to examine the defendant's prior conviction file even though she knew that the government planned to use information from that file to obtain a death sentence against the defendant. Her failure "seriously compromis[ed] their opportunity to respond to a case for aggravation." 545 U.S. at 385. The instant case, in contrast, does not involve the rebuttal of aggravating evidence. The defendant has not shown that his criminal history was calculated improperly, and therefore it cannot be said that counsel's alleged failure to "learn details" about the defendant's prior offenses prejudiced the defense.

In summary, the defendant's arguments that trial counsel performed deficiently by failing to obtain a lower criminal history category for the defendant are either inadequate on their face or refuted by the record. There is no need for a hearing on this claim; it shall be dismissed.

### C. Apprendi

Finally, the defendant argues that after the jury found him guilty of participating in a conspiracy involving less than 500 grams of cocaine, I violated the principles set forth in Apprendi v. New Jersey, 530 U.S. 466 (2000), by finding him to be responsible for a greater quantity of drugs and sentencing him accordingly. (See ECF Nos. 366 and 370 at 11.)

The defendant's objections to paragraph 25 of the PSR, which were ultimately resolved against him, relate to this same issue. As the Eighth Circuit has explained, "For sentencing purposes, a jury's [drug] quantity determination 'is practically irrelevant,' because at sentencing the district court applies a preponderance-of-the-evidence standard and 'may impose a sentence based on a drug quantity determination greater than that found by the jury so long as the sentence does not exceed the statutory maximum of the convicted offense.'" United States v. Turner, 603 F.3d 648, 471 (8th Cir. 2010) (citations omitted). The defendant's 121-month sentence in this case does not exceed the 20-year statutory maximum for the offence found by the jury. See 21 U.S.C. § 841(b)(1)(C). Under these circumstances, Apprendi is inapplicable.

**IT IS ORDERED** that:

1. the defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, filing 357, is denied; and

2. a certificate of appealability is denied, as none of the issues in this case satisfy the showing required by 28 U.S.C. § 2253(c)(2).[6]

Dated January 12, 2011.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

---

[6] The defendant may seek a certificate from the Eighth Circuit Court of Appeals as provided in Federal Rule of Appellate Procedure 22.